IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORILLARD TOBACCO COMPANY, )
a Delaware corporation, )
                            )
         Plaintiff, )
                            )
       vs. )    No. 03 C 4769
                            )
CANSTAR (U.S.A.) INC., a Florida )
corporation, et al., )
                            )
       Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorillard Tobacco Company (Lorillard) has been unable to satisfy a judgment for $1.75 million against Cam-Kat, Inc. and its owner, Mustapha Kechtban. That judgment was entered on February 11, 2005. On September 8, 2005, Lorillard filed a motion for a turnover order of assets in the possession of Basima Kechtban, Mustapha's wife. Lorillard contends that the identified assets belong to Mustapha and should be applied to the outstanding judgment. Basima objects to the turnover order and argues that Lorillard has failed to show that the assets it seeks from Basima actually belong to her husband. We grant in part and deny in part Lorillard's motion.

The enforcement of a civil judgment entered by a federal court is made in accordance with the law of the forum state. *See* Fed. R. Civ. P. 69; Cacok v. Covington, 111 F.3d 52, 53 (7th Cir. 1997). In Illinois, civil judgments are enforced through supplementary proceedings pursuant to 735 ILCS § 5/2-1402 and Illinois Supreme Court Rule 277. These provisions are to be liberally construed. Bentley v. Glenn Shipley Enterprises, Inc., 248 Ill. App. 3d 647, 619 N.E.2d 816, 189 Ill. Dec. 115 (Ill. App. 4th Dist. 1993).

A supplementary proceeding is a post-judgment process designed to assist the judgment creditor in discovering assets to satisfy the judgment. Kennedy v. Four Boys Labor Service, Inc., 279 Ill. App. 3d 361, 664 N.E.2d 1088, 1091 (Ill. App. 2d Dist. 1996); City of Chicago v. Air Auto Leasing Co., 297 Ill. App. 3d 873, 697 N.E.2d 788, 232 Ill. Dec. 46 (Ill. App. 1st Dist. 1998). The proceeding is initiated by the service of a citation to discover assets, which, once filed, prevents the disposition or transfer of any non-exempt assets and property. *See* section 1402(a), (f)(1). After the citation is served, the judgment becomes a lien on the judgment debtor's assets. Section 1402(m). The supplementary proceeding continues for six months or until court order. Rule 277(f); Dominick's Finer Foods, Inc. v. Mason (In re Makula), 172 F.3d 493, 496 (7th Cir. 1999); Celano v. Frederick, 54 Ill. App. 2d 393, 203 N.E.2d 774, 780 (Ill. App. 1st Dist. 1964).

The judgment creditor may examine the "judgment debtor or any third party who might hold the assets of the judgment debtor." Pyshos v. Heart-Land Development Co., 258 Ill. App. 3d 618, 630 N.E.2d 1054, 1057, 196 Ill. Dec. 889 (Ill. App. 1st Dist. 1994). If the judgment creditor discovers that a third party holds assets belonging to the judgment debtor, the court may order the third party to deliver the assets in satisfaction of the judgment. Bentley, *supra*; Schak v. Blom, 334 Ill. App. 3d 129, 777 N.E.2d 635, 267 Ill. Dec. 832 (Ill. App. 1st Dist. 2002); Society of Lloyd's v. Estate of McMurray, 274 F.3d 1133, 1136 (7th Cir. 2001). Because Basima is a third party, the relevant inquiry is whether she is holding any assets belonging to Mustapha that should be applied to the judgment. Pyshos, 630 N.E.2d at 1057.

On March 3, 2005, Lorillard filed a citation on Basima to discover assets, and on September 1, 2005, she appeared for a citation examination. During that examination, Lorillard asked Basima about various items and other assets that were discovered during an

inspection of the family's apartment. The assets and property Lorillard seeks are several bank accounts, jewelry, a computer, a television, and fur coats. Also subject to much controversy is a loan made by Ibrahim Shihadeh, who wrote four checks to Basima that total $95,000.

Before addressing each item sought, we must first address whether any property is exempt from application to the judgment. A judgment creditor may only obtain non-exempt property of the judgment debtor. Lorillard contends that no exemptions apply here, and even if they could apply, they have been exhausted or waived. Basima argues that the property Lorillard seeks is exempt without qualification. Since the judgment creditor may only pursue property and assets belonging to the judgment debtor, any exemption would not attach to a third party's property. It thus makes little sense to argue that certain property is exempt *and* does not belong to the judgment debtor. But there is a more basic problem with Basima's claim to exemptions – she has not sought an exemption hearing as provided in section 1402(I). The burden is not on the judgment creditor to show that an exemption is inapplicable. *See* Dowling v. Chicago Options Assocs., Inc., 2006 Ill. App. LEXIS 235, *13, 2006 WL 782861, (Ill. App. 1st Dist. 2006) (judgment debtor must affirmatively assert exemptions). Basima's exemption contentions must therefore be disregarded.

Lorillard argues that bank accounts at Bank One (now Chase), Bank of America and TCF should be applied to the judgment because they actually belong to Mustapha, despite the fact that only Basima's name appears on the accounts. At her citation examination, Basima acknowledged that Mustapha had access to these accounts, which complicates finding that those accounts belong to her. Her testimony regarding the Bank One account is illustrative.

Basima stated that Mustapha deposited Shihadeh's checks into the Bank One account. Those checks were made out to Basima and the account was held solely by her (Basima exam.

at 29). Only Basima could write checks on the Bank One account, but it is apparent that Mustapha made a number of ATM withdrawals. Over a two-month period, ten withdrawals were made at a Casino in Hammond, Indiana, each in the amount of $303.00. Lorillard asserts that Mustapha gambles often. Basima does not gamble. Further, Basima expressed no concern when the balance in the Bank One account approached zero (Basima exam. at 131), including when Shihadeh's loan was depleted (*id.* at 129). Lorillard has also provided a number of receipts from a currency exchange that Mustapha purportedly used to pay various bills. Each receipt is dated July 5, 2005. However, the Bank One statements only detail account activity from March 16, 2005, through May 16, 2005, and thus shed no light on whether Mustapha drew money from the Bank One account in connection with the currency exchange transactions.

When a debtor is named on a joint account there is *prima facie* evidence that assets contained in the account belong to the debtor. In re Cloe, 336 B.R. 762, 764 (Bankr. C.D. Ill. 2006). Here the account is in the name of a third party, but the assets are controlled by the debtor. Due to extensive control that Mustapha had over the Bank One account, it can be said that the assets that were held therein belonged to him. Basima stresses that Shihadeh's checks named her as payee, and that the assets therefore belong to her. That position cannot be adopted given Mustapha's apparent exclusive use of the proceeds – evidenced by the casino withdrawals, Basima's blanket disinterest in the disposition of the loans, and inconsistencies in Basima's testimony. She said she approached Shihadeh for a loan in October 2004. However, the first check is dated May 2004.[1]

---

[1]There is no evidence before the court that shows that Shihadeh was merely passing on money that belonged to Mustapha, and we make no suggestion to that extent. Although the loans were highly unconventional (*i.e.*, they lacked terms governing repayment), we do not espouse Lorillard's suspicions of

Similar to the Bank One account, only Basima was named on the Bank of America account. Basima stated that she opened the account on her own initiative and for the purposes of making deposits in the event that she began working (Basima exam. at 18). She also stated that she only made the initial $200 deposit required to open the account. However, she acknowledged that there was between $4,000 and $5,000 in the account (*id.* at 115-16). She said that these funds were loans that Mustapha deposited into the account. While control of a bank account cannot be gained merely by depositing funds, Basima's lack of income, the undisclosed loan sources, and her nominal interest in the account strongly suggest that Mustapha actually controlled the Bank of America account as well. There is no similar evidence connecting Mustapha to the TCF account, which Basima testified she no longer uses *(id.* at 16).

Even though the assets in the Bank One and Bank of America accounts can be attributed to Mustapha, the Shihadeh loans have long since been withdrawn. Indeed, we are not sure of the current balance or status of any of the bank accounts, aside from the fact that the court ordered the accounts unfrozen so Basima could pay living expenses. We also gather that currently Mustapha has no access to these accounts. Since only Basima's name appears on the accounts, it does not seem that Mustapha has a legal entitlement that would justify their turnover. *See* section 1402(c)(3).

It thus appears that while Mustapha used the accounts, only Basima now uses them, and any funds currently in the accounts properly belong to her, provided they are distinct from the money that existed when Mustapha controlled the accounts. These funds could be earned income or loans provided by other parties. Of course, if it can be shown that any funds

---

their nature without additional evidence.

currently in the accounts were somehow deposited by Mustapha, either directly or through

intermediaries, then the accounts would be subject to turnover. Such a showing has not been

made. Ordering a turnover of these third-party accounts only because assets previously

contained therein belonged to the debtor would be improper.

During the inspection of the Kechtban's home, Lorillard discovered the following items

of personal property that it now claims should be turned over: jewelry, a personal computer

purchased in March 2005, a television, and two fur coats. Without any legal citation or

discussion, Lorillard claims that these items are marital assets that may be used to satisfy the

outstanding judgment. It also claims that because Mustapha has not disclosed his source of

income, it "is entitled to seize what it can find" (plf. mot. at 7). That is not the correct legal

standard. As noted above, only assets that belong to the judgment debtor are subject to

turnover. Basima echoes this standard when she responds that all the property Lorillard

identifies belongs to her or her children, or does not exceed the $2,000 exemption. She does

not address Lorillard's passing reference to marital assets (which Lorillard primarily raises

in its reply).

We address the tangible assets in the context of section 1402(c)(3), which governs third-

party turnover orders. Under that section, the judgment debtor must have a legal interest in

the assets *in specie,* or their proceeds or value. *See* Mid-American Elevator Co. v. Norcon, Inc.,

287 Ill. App. 3d 582, 679 N.E.2d 387, 223 Ill. Dec. 202 (Ill. App. 1ˢᵗ Dist. 1996) (stating that the

court may order turnover of assets held by a third party "as long as the judgment debtor

would have the right to recover such assets from the third party"). The vast majority of

jewelry in Basima's possession was either acquired prior to the marriage or gifted to her or

her children, and is therefore classified as non-marital property. *See* 750 ILCS 5/503(a)(1),

(6); <u>Mungo v. Taylor</u>, 355 F.3d 969, 976 (7th Cir. 2004); <u>In re Okon</u>, 310 B.R. 603, 607 (Bankr. N.D. Ill. 2004). The jewelry that is clearly Mustapha's, such as the gold diamond ring and gold band (items no. 16 and 17 in Basima's exhibit A), is subject to turnover. Basima's fur coat was a gift from her brother (Basima exam. at 143). The other fur coat is actually a faux fur coat that is of negligible value, particularly relative to the outstanding judgment. Both the television and computer were purchased during the marriage, and Mustapha therefore has a legal interest in those items. But Basima does as well. Only the value of Mustapha's interest in the television and computer may thus be turned over to Lorillard.

## CONCLUSION

Lorillard's motion for a turnover order is granted in part and denied in part. Based on the record before the court, the bank accounts are not subject to turnover. Only jewelry that clearly belongs to Mustapha may be turned over. The fur coat is not to be turned over. The value of Mustapha's interest in the computer and television shall be turned over and applied to the judgment.

James B. Moran
_____
JAMES B. MORAN
Senior Judge, U. S. District Court

May 16 , 2006.